# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BELLES CAMP COMMUNICATIONS, INC., *et al.,* <br><br> Defendants. | Case No. 1:24-cv-04949 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DELVEPOINT, LLC, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04096 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EQUIMINE, INC., *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04261 |

ATLAS DATA PRIVACY
CORPORATION, *et al.,*

                Plaintiffs,

v.

FIRST DIRECT, INC., *et al.,*

                Defendants.

Case No. 1:25-cv-01480

---

ATLAS DATA PRIVACY
CORPORATION, *et al.,*

                Plaintiffs,

v.

GOHUNT, LLC, GOHUNT
MANAGEMENT HOLDINGS, LLC, *et
al.,*

                Defendants.

Case No. 1:24-cv-04380

---

ATLAS DATA PRIVACY
CORPORATION, *et al.,*

                Plaintiffs,

v.

INFOMATICS, LLC, *et al.,*

                Defendants.

Case No. 1:24-cv-04041

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>INNOVATIVE WEB SOLUTIONS, LLC, *et al.*,<br><br>          Defendants. | Case No. 1:25-cv-01535 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>LIGHTHOUSE LIST COMPANY, LLC, *et al.*,<br><br>          Defendants. | Case No. 1:24-cv-11443 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>MELISSA DATA CORPORATION, *et al.*,<br><br>          Defendants. | Case No. 1:24-cv-04292 |

ATLAS DATA PRIVACY
CORPORATION, *et al.*,

          Plaintiffs,

v.

NUWBER, INC., *et al.,*

          Defendants.

Case No. 1:24-cv-04609

ATLAS DATA PRIVACY
CORPORATION, *et al.*,

          Plaintiffs,

v.

PEOPLEWHIZ, INC., *et al.*,

          Defendants.

Case No. 1:25-cv-00237

ATLAS DATA PRIVACY
CORPORATION, *et al.*,

          Plaintiffs,

v.

THE PEOPLE SEARCHERS, LLC, *et al.*,

          Defendants.

Case No. 1:24-cv-04045

ATLAS DATA PRIVACY
CORPORATION, *et al.*,

               Plaintiffs,

v.

WE INFORM, LLC, *et al.*,

               Defendants.

Case No. 1:24-cv-04037

---

ATLAS DATA PRIVACY
CORPORATION, *et al.*,

               Plaintiffs,

v.

QUANTARIUM ALLIANCE, LLC, *et al.*,

               Defendants.

Case No. 1:24-cv-04098

---

ATLAS DATA PRIVACY
CORPORATION, *et al.*,

               Plaintiffs,

v.

SPY DIALER, INC., *et al.*,

               Defendants.

Case No. 1:24-cv-11023

ATLAS DATA PRIVACY
CORPORATION, *et al.*

                    Plaintiffs,

v.

GREENFLIGHT VENTURE
CORPORATION, *et al.*,

                    Defendants.

Case No. 1:25-cv-01517

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PERSONAL JURISDICTION DISCOVERY

---

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone (973) 577-5500
Email: rparikh@pemlawfirm.com
 keinhorn@pemlawfirm.com
 jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
jbront@bsfllp.com

**BIRD MARELLA RHOW
LINCENBERG DROOKS NESSIM
LLP**
Ekwan E. Rhow (admitted *pro hac vice*)
Elliot C. Harvey Schatmeier (admitted
*pro hac vice*)
Bill L. Clawges (admitted *pro hac vice*)
1875 Century Park East, 23rd Fl
Los Angeles, California 90067
Telephone: (310) 201-2100
Email: erhow@birdmarella.com
ehs@birdmarella.com
bclawges@birdmarella.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite
2800 Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice)*
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Email: epalmer@bsfllp.com

**MORGAN & MORGAN, P.A.**
Ryan J. McGee (admitted *pro hac vice*)
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: rmcgee@forthepeople.com
jyanchunis@forthepeople.com

## **<u>TABLE OF CONTENTS</u>**

Page

TABLE OF AUTHORITIES.......................................................................... ii

INTRODUCTION ....................................................................................1

BACKGROUND .......................................................................................1

STANDARD ............................................................................................2

ARGUMENT ..........................................................................................3

I.    THE COMPLAINTS JUSTIFY DISCOVERY TO ESTABLISH
      PERSONAL JURISDICTION UNDER THE EFFECTS TEST AND THE
      PURPOSEFUL-AVAILMENT TEST. .............................................................3

      A.  Plaintiffs are Entitled to Jurisdictional Discovery on the Elements
          of the Effects Test. ....................................................................4

      B.  The Complaints Also State a Prima Facie Case for Jurisdiction
          Under the Traditional Purposeful-Availment Test....................................9

II.   EACH INTERROGATORY SOUGHT INFORMATION RELEVANT TO
      THE JURISDICTIONAL THEORIES SUPPORTED BY THE
      COMPLAINTS AND PROPORTIONAL TO THE NEEDS OF THESE
      CASES. .............................................................................................10

III.  EACH RFP SEEKS INFORMATION RELEVANT TO PERSONAL
      JURISDICTION AND PROPORTIONAL TO THE NEEDS OF THESE
      CASES. .............................................................................................20

CONCLUSION .......................................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AF Holdings, LLC v. Does 1-1058*,
  752 F.3d 990 (D.C. Cir. 2014) ..........................................................................13

*Barton v. RCI, LLC*,
  2013 WL 1338235 (D.N.J. Apr. 1, 2013) ................................................. passim

*Berlin Media Art e.k. v. Does 1-654*,
  2001 WL 36383080 (N.D. Cal. Oct. 18, 2011)....................................................13

*Briskin v. Shopify, Inc.*,
  135 F.4th 739 (9th Cir. 2025)...................................................................... passim

*Calder v. Jones*,
  465 U.S. 783 (1984).......................................................................................1, 7

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F. 3d 390 (4th Cir. 2003)..............................................................................30

*Cephalon Inc. v. Watson Pharms., Inc.*,
  629 F. Supp. 2d 338 (D. Del. 2009).......................................................... 16, 17

*Ciolli v. Iravani*,
  651 F. Supp. 2d 356 (E.D. Pa. 2009) .................................................................23

*Doe v. Henry Ford Health Sys.*,
  865 N.W. 2d 915 (Mich. App. 2014) ...................................................................6

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
  592 U.S. 351 (2021)................................................................................... passim

*Goldfarb v. Kalodimos*,
  539 F. Supp. 3d 435 (E.D. Pa. 2021) ...................................................................9

*Hasson v. FullStory, Inc.*,
  114 F.4th 181 (3d Cir. 2024).................................................................... passim

*Hepp v. Facebook*,
  14 F.4th 204 (3d Cir. 2021)...................................................................................9

*In re Chocolate Confectionary Antitrust Litig.*,
  674 F. Supp. 2d 580 (M.D. Pa. 2009) ................................................................28

*Johnson v. Griffin*,
  85 F.4th 429 (6th Cir. 2023) ................................................................9

*Kallstrom v. City of Columbus*,
  136 F.3d 1055 (6th Cir. 1998) ................................................................7

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ................................................................ 23, 37

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007) ................................................................25

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
  107 F.3d 1026 (3d Cir. 1997) ................................................................3

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ................................................................8, 12

*Mercy Catholic Med. Ctr. v. Thompson*,
  380 F.3d 143 (3d Cir. 2004) ................................................................26

*Monturi v. Englewood Hosp.*,
  588 A. 2d 408 (N.J. App. Div. 1991) ................................................................6

*Paul P. v. Verniero*,
  170 F.3d 396 (3d Cir. 1999) ................................................................7

*Reetz v. Advocate Aurora Health, Inc.*,
  983 N.W. 2d 669 (Wis. App. 2022) ................................................................6

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001) ................................................................4

*Romaine v. Kallinger*,
  537 A. 2d 284 (N.J. 1988) ................................................................6

*Schnur v. JetBlue Airways Corp.*,
  2024 WL 2816552 (W.D. Pa. June 3, 2024) ................................................................12

*Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*,
    2021 WL 229400 (E.D. Pa. Jan. 21, 2021) ............................................... 2, 10, 27

*State v. N.I.*,
    793 A. 2d 760 (N.J. App. Div. 2002) ....................................................................6

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) ..................................................................... passim

*Vonbergen v. Liberty Mut. Ins. Co.*,
    705 F. Supp. 3d 440, 450 (E.D. Pa. 2023) ......................................... 3, 8, 18, 19

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................................9, 28

**Statutes**

N.J.S.A. 56:8-166.1(a)(1) ...........................................................................................7

N.J.S.A. 56:8-166.1(a)(2) .........................................................................................27

N.J.S.A. 56:8-166:1(d)(3) ...........................................................................................5

**Other Authorities**

77 C.J.S. Right of Privacy and Publicity § 32 ...........................................................6

Restatement (Second) of Torts § 161 ........................................................................6

Restatement (Second) of Torts § 825 ........................................................................6

**Rules**

Fed. R. Civ. P. 26.......................................................................................................1

Fed. R. Civ. P. 26(b)(1) ..............................................................................................3

Fed. R. Civ. P. 37(a)(3)(B) ........................................................................................1

## INTRODUCTION

Plaintiffs respectfully submit this motion to compel jurisdictional discovery pursuant to Rules 26 and 37(a)(3)(B) of the Federal Rules of Civil Procedure.[1] Plaintiffs served on Defendants Interrogatories and Requests for Production intended to establish personal jurisdiction under both the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984), and the traditional purposeful-availment test. For the most part, Defendants' responses are woefully inadequate, relying throughout on boilerplate objections that fundamentally misunderstand the jurisdictional inquiry. Plaintiffs thus request that the Court compel Defendants to produce relevant evidence in response to Plaintiffs' Interrogatories and RFPs.

## BACKGROUND

On April 2, 2025, this Court ordered Plaintiffs to serve "any interrogatories and requests for production of documents relevant to the motions of defendants to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure." Doc. 50 at 10. Around April 14, 2025,[2] Plaintiffs served identical sets of requests for production of documents ("RFPs") and interrogatories on each of the Defendants

---

[1] Unless stated otherwise, citations to "Compl." refers to the Complaint filed in *Atlas Data Privacy Corp., et al. v. GoHunt, LLC, et al.*, No. 24-cv-04380-HB, Doc. 1. In case citations, all internal quotation marks and citations are omitted unless otherwise indicated.

[2] Plaintiffs served First Direct, Inc. with discovery on May 20, 2025.

1

listed in the caption. Declaration of Adam Shaw ("Shaw Decl."), ¶ 3. Copies of Plaintiffs' discovery requests are attached to the Shaw Declaration as **Exhibit A**. Around May 14, 2025, Defendants served responses to the RFPs and Interrogatories, the bulk of which were wholly deficient. Indeed, Nuwber, Quantarium, and First Direct have not produced ***any*** documents to date.[3]

On June 4, 2025, Plaintiffs sent Defendants a letter identifying the deficient responses and requesting a meet and confer. Shaw Decl., ¶ 7, Ex. B. The parties conducted a group meet and confer on June 9, 2025 but were unable to resolve their disputes. On June 17, 2025, following a status conference, the Court ordered Plaintiffs to file this motion to compel responses "to interrogatories and requests for production of documents related to the issue of personal jurisdiction." Doc. 64.

## STANDARD

"The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter . . . and may lead to admissible evidence." *Barton v. RCI, LLC*, 2013 WL 1338235, at *3 (D.N.J. Apr. 1, 2013). "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, 2021 WL 229400, at *6 (E.D. Pa. Jan. 21, 2021). "More specifically, the party resisting production of

---

[3] Defendants' responses were filed with the Court, but if the Court requires any additional information regarding these responses from Plaintiffs, Plaintiffs will file those responses under seal.

discovery bears the burden of establishing lack of relevancy or undue burden, must demonstrate to the Court that the requested documents either do not come within the broad scope of relevance as defined" in Federal Rule 26(b)(1), "or else that they are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure, and must do more than argue that to compile and produce documents would be burdensome." *Barton*, 2013 WL 1338235, at *3.

## ARGUMENT

### I. THE COMPLAINTS JUSTIFY DISCOVERY TO ESTABLISH PERSONAL JURISDICTION UNDER THE EFFECTS TEST AND THE PURPOSEFUL-AVAILMENT TEST.

"The rule of the Third Circuit" is "that jurisdictional discovery should be allowed unless the plaintiff[']s claim is clearly frivolous." *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 450 (E.D. Pa. 2023) (quoting *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of "the requisite contacts between [the defendant] and the forum state," the plaintiff's "right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

The Complaints clearly allege the possible existence of facts that would establish personal jurisdiction, as this Court already recognized in granting

3

jurisdictional discovery in the first place. Doc. 50. In particular, the Complaints support at least two independent theories of personal jurisdiction. <u>First</u>, each Complaint states a prima facie case for jurisdiction under the effects test by alleging that each Defendant intentionally disclosed, re-disclosed, or otherwise made available the protected information of a covered person—and did so with knowledge that disclosure would violate the rights of a New Jersey resident and expose them to threats, violence, and harassment in New Jersey. <u>Second</u>, the Complaints allege multiple acts of purposeful availment that are directly related to the claims alleged against the Defendants.

### A. Plaintiffs are Entitled to Jurisdictional Discovery on the Elements of the Effects Test.

Under the effects test, personal jurisdiction exists when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc*., 114 F.4th 181, 187 (3d Cir. 2024) (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)). Here, each Complaint alleges a prima facie case for jurisdiction under the effects test by alleging that the Defendant committed intentional torts aimed at a New Jersey resident with knowledge that the brunt of the harm would be felt in New Jersey. These allegations are sufficient to establish each element of the effects test, so Plaintiffs are entitled to discovery on those three elements.

First, by alleging that each Defendant violated Daniel's Law, the Complaint necessarily alleges that each Defendant committed an intentional tort for purposes of the effects test. Defendants claim that the effects test "is inapplicable here because it only applies to intentional torts." Doc. 42-1 at 12 n. 9. But as Plaintiffs explained in their Supplemental Brief, Daniel's Law creates an intentional tort because it "requires an intentional act of disclosure, though liability may be imposed for such a disclosure only if the defendant was negligent in reviewing and responding to received nondisclosure requests." CA No. 24-04105-HB, Doc. 67 at 4 n. 2.[4] In other words, the act of "disclosing, re-disclosing, or otherwise making available" a covered person's protected information is an intent element. But a defendant need not intend to violate a covered person's rights under the statute to be held liable for actual or liquidated damages—it is enough that the defendant display negligent indifference to a covered person's rights after receiving a nondisclosure request.

As long as an element of liability requires intent, the tort is intentional, even if the *mens rea* or fault standard applicable to other elements does not require intent.

---

[4] Daniel's Law defines "disclose" to mean "to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database." N.J.S.A. 56:8-166:1(d)(3). As Plaintiffs noted in their supplemental brief, "[v]irtually all of these acts inherently involve a knowing act of providing information to a third-party," and "even disclosure by 'making available' has to involve knowing acts of including information in a searchable database and granting a third-party access to that database." CA No. 24-04105-HB, Doc. 67 at 4–5.

Intentional torts often impose an intent requirement only on the conduct element (here, the act of disclosure) without requiring intent as to the harmful or wrongful effects of that conduct. *See, e.g.*, *Monturi v. Englewood Hosp.*, 588 A. 2d 408, 410 (N.J. App. Div. 1991) (battery requires intentional contact, not intent that the contact is harmful or offensive); Restatement (Second) of Torts §§ 161 (continuing trespass) & 825 (intentional nuisance). To take the most salient example, the common-law disclosure tort requires the intentional "publication of private facts," but the defendant does not need to intend that the disclosure be "unreasonable." *Romaine v. Kallinger*, 537 A. 2d 284, 297 (N.J. 1988).[5]

Beyond that, each Complaint alleges claims for punitive damages which are predicated on allegations that the Defendant **willfully** violated Daniel's Law. *See* Compl., Prayer ¶ C. Willfulness means "done with deliberate intention." *State v. N.I.*, 793 A. 2d 760, 769 (N.J. App. Div. 2002). Thus, at minimum, each Complaint pleads intentional torts for purposes of the effects test insofar as each alleges willful violations of Daniel's Law.

---

[5] Most courts have held that the common-law disclosure tort requires that "the disclosure must have been intentional." 77 C.J.S. Right of Privacy and Publicity § 32; *Reetz v. Advocate Aurora Health, Inc.*, 983 N.W. 2d 669, 681 (Wis. App. 2022) ("[P]ublicity of private facts requires intentional conduct."); *Doe v. Henry Ford Health Sys.*, 865 N.W. 2d 915, 920 (Mich. App. 2014) ("[T]o establish an invasion of privacy through the disclosure of private facts, a plaintiff must show that the disclosure of those facts was intentional.").

Second, the "brunt of the harm" caused by the torts alleged in the Complaints is necessarily felt "in the forum." *Hasson*, 114 F.4th at 187–88. Covered persons suffer several harms as a consequence of nonconsensual disclosure, including: (i) the violation of their right to privacy in their home addresses and phone numbers, *see Paul P. v. Verniero*, 170 F.3d 396 (3d Cir. 1999), and *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998); (ii) the psychic injury associated with the loss of control over access to their contact information; and (iii) risks of harassment, threats, and violence. Compl. ¶¶ 1–16. The "brunt" of those harms will be felt by a covered person "in the State in which she lives and works"—and is most likely to be targeted for actions taken in the line of duty. *Calder*, 465 U.S. at 789–90.

Third, the Complaints allege facts sufficient to infer that Defendants "expressly aimed" their tortious activity at New Jersey. *See* Compl. ¶¶ 18–21, 29–35, 38–50, 52–57. Defendants cannot be liable under Daniel's Law unless they have received a nondisclosure request from a covered person. N.J.S.A. 56:8-166.1(a)(1). Any Defendant who receives such a request has actual or constructive knowledge that disclosing, re-disclosing, or otherwise making available the New Jersey address or phone number of a covered person after ten business days will violate that covered person's privacy rights and expose them to harm in New Jersey. That is enough for express targeting under the effects test. *See Briskin v. Shopify, Inc.*, 135 F.4th 739,

7

757 (9th Cir. 2025) (express aiming element is satisfied if defendant "knows—either actually or constructively"—that conduct is aimed at the forum) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011)); *Vonbergen*, 705 F. Supp. 3d at 451 ("[E]xpress aiming" is satisfied if the defendant "knew, at least constructively" that it was targeting a plaintiff in a forum).

Defendants assert that a nondisclosure request is a "unilateral contact" that is irrelevant to the jurisdictional analysis, but nondisclosure requests are relevant to show the **knowledge** required for express aiming, not a **contact** with the forum. But the contact with the forum is not the notification, but the ***act of disclosing*** a covered person's New Jersey address and/or phone number, thereby violating their privacy rights and exposing them to downstream injury in New Jersey.

The notification requirement ensures that "the defendant 'individually targeted' a plaintiff known to be a forum resident" any time a defendant discloses, re-discloses, or otherwise makes available the address or phone number of a covered person. *Briskin*, 135 F.4th at 758. Any defendant who makes such a disclosure "*knew* that it was targeting*" the relevant covered person where they live in New Jersey "*before*" the disclosure occurred. *Hasson*, 114 F.4th at 191–92. And virtually any offending disclosure will also have "content bearing a particular nexus to that forum" because New Jersey addresses and phone numbers will necessarily include "New Jersey," "N.J.," or a New Jersey area code. *Id.* at 190; *see also Johnson v. Griffin*, 85

F.4th 429, 433 (6th Cir. 2023); *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 453–54 (E.D. Pa. 2021).

## B. The Complaints Also State a Prima Facie Case for Jurisdiction Under the Traditional Purposeful-Availment Test.

The Complaints also support a prima facie case that each Defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum' and 'invok[ed] the benefits and protections of [the forum's] laws.'" *Hasson*, 114 F.4th at 186 (quoting *Toys*, 318 F. 3d at 451). Under the purposeful-availment test, personal jurisdiction exists if the defendant has "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state" and that "give rise to—or relate to—the plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021).

Plaintiffs allege that each Defendant purposefully collected data on New Jersey residents—in many cases, from New Jersey public records—and know that customers or users of that information are in New Jersey. Compl. at ¶¶ 2, 18–21, 29–50, 52–57. At least when taken together with the torts directed at New Jersey alleged in each Complaint, these contacts establish that each Defendant "deliberately 'reached out beyond' its home" and could "reasonably anticipate being haled into court" in New Jersey. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). And because

Defendants' contacts with the forum revolve around their collection and disclosure of New Jersey data concerning New Jersey residents, Plaintiffs' claims clearly "arise out of or relate to" each Defendant's contacts with the forum. *Ford*, 592 U.S. at 359.

## II.  EACH INTERROGATORY SOUGHT INFORMATION RELEVANT TO THE JURISDICTIONAL THEORIES SUPPORTED BY THE COMPLAINTS AND PROPORTIONAL TO THE NEEDS OF THESE CASES.

Because Plaintiffs stated a prima facie case of personal jurisdiction as to each Defendant, Plaintiffs were entitled to jurisdictional discovery, including meaningful answers to their Interrogatories. "If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer." *Barton*, 2013 WL 1338235, at *4. "[A]ll grounds for objections to interrogatories must be stated with specificity and … any ground not so stated in a timely objection is waived unless excused by the Court for good cause." *Id.* at *5. "[T]he mere statement that a discovery request is overly broad, burdensome[,] oppressive and irrelevant is not adequate to voice a successful objection." *Solano-Sanchez*, 2021 WL 229400, at *6. Here, most Defendants did not comply with the Interrogatories, and their boilerplate objections are largely waived.

**Interrogatory 1: Identify any product, service, or digital platform that Defendant has since December 1, 2023, owned, licensed, or otherwise offered**

**and that has published, provided access to, or otherwise made available the home addresses and/or telephone numbers of New Jersey residents.**

Most Defendants provided sufficient responses to Interrogatory 1, but Nuwber and Spy Dialer offered links to their websites and otherwise objected to Interrogatory 1 as vague, overbroad, irrelevant, and unduly burdensome. As every other Defendant understood, Interrogatory 1 simply required Defendants to provide a concise description of each product, service, or digital platform it offers that publishes or otherwise makes available the addresses and phone numbers of New Jersey residents. Such products, services, and platforms are plainly relevant to whether the Defendant discloses, re-discloses, or otherwise makes available New Jersey addresses and/or phone numbers in violation of Daniel's Law, which goes to whether the Defendant "committed an intentional tort" under the effects test. *Hasson*, 114 F.4th at 187. Such products and services also indicate that the Defendant purposefully "invok[ed] the benefits" of New Jersey law by profiting from data obtained from New Jersey public records. *Toys*, 318 F.3d at 451. Thus, the Court should require Nuwber and Spy Dialer to provide a meaningful description of their products and services in response to Interrogatory 1.

**Interrogatory 2: For each product, service, or digital platform identified in response to Interrogatory Number 1, provide information regarding all access,**

11

**purchase, or use of the product since December 1, 2023 by anyone in New Jersey.**

Nuwber, Quantarium, and Spy Dialer refused to answer Interrogatory 2. But use of a Defendant's product by persons in New Jersey is plainly relevant to whether a Defendant (i) "purposefully availed itself of the [New Jersey] market" by "conduct[ing] business with [forum] residents" and (ii) "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them in'" the forum. *Hasson*, 114 F.4th at 193 (quoting *Ford Motor*, 592 U.S. at 365). And under the effects test, such information is relevant to whether a Defendant "'knows—either actually or constructively' about its customer base there and 'exploits that base for commercial gain." *Briskin*, 135 F.4th at 757 (quoting *Mavrix Photo*, 647 F.3d at 1230); *Schnur v. JetBlue Airways Corp.*, 2024 WL 2816552, at *5–6 (W.D. Pa. June 3, 2024) (website providing forum-specific services to forum users "deliberately target[s]" forum). And although these Defendants complained that Interrogatory 2 is vague and overly broad, they failed to articulate any justification for those objections.

Nuwber, Quantarium, and Spy Dialer also objected that complying with Interrogatory 2 would be unduly burdensome because they have no data on how many of their users are located in New Jersey. But determining how often a New Jersey customer accessed a Defendants' products is neither expensive nor burdensome, because there are familiar methods of matching an IP address with a

home address or approximate location. *See, e.g.*, *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014) ("[G]eolocation services, which enable anyone to estimate the location of Internet users based on their IP addresses. Such services cost very little or are even free."); *Berlin Media Art e.k. v. Does 1-654*, No. 11-03770 JSC, 2001 WL 36383080, at *2 (N.D. Cal. Oct. 18, 2011). In relation to the importance of the issues, the amount in controversy, and the parties' relative access to information, the burden of complying with Interrogatory 2 does not outweigh its benefit for purposes of Rule 26(b)(1). But if Defendants demonstrate that they are incapable of employing these methods, Plaintiffs would be satisfied with a production of a list of IP addresses of users of Nuwber, Quantarium, and Spy Dialer products and services between December 1, 2023 and the present.

Belles Camp and Lighthouse also offered deficient responses to Interrogatory 2. Belles Camp's response did not provide the total number of New Jersey subscribers from December 1, 2023 to the present. Lighthouse limited its response to customers with New Jersey billing addresses, without including customers with New Jersey mailing addresses. Plaintiffs request that the Court order Belles Camp and Lighthouse to supplement their answer to Interrogatory 2 to provide that information.

**Interrogatory 3: Identify all officers, directors, employees, contractors, vendors, and any other individuals or entities who, on Defendant's behalf, have since December 1, 2023 been involved in any marketing, advertising, soliciting, or offering of any product, service, or digital platform that has published,**

13

**provided access to, or otherwise made available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.**

Belles Camp, Delvepoint, Infomatics, Melissa Data, Nuwber, Quantarium, Spy Dialer, People Searchers, We Inform, PeopleWhiz, and First Direct did not identify any officer, director, employee in response to Interrogatory 3.[6] Most of these Defendants argued that this Interrogatory is irrelevant because their officers, directors, employees, contractors, vendors, or similar do not reside in New Jersey. But "[d]irect in-forum activities are not the only means of establishing personal jurisdiction over an out-of-state defendant" under either the effects test or the purposeful-availment test. *Hasson*, 114 F.4th at 186. And dissemination of the protected information of covered persons in New Jersey is directly relevant to show that Defendants "intentionally caused harm there." *Hasson*, 114 F.4th at 186.[7]

---

[6] Belles Camp claimed that it has no directors, officers, employees, or other vendors or agents who have marketed, advertised, solicited, or offered a product that provides access to the addresses and phone numbers of covered persons—an incredible assertion, given that Belles Camp admitted in response to Interrogatories 1 and 2 that it offers a product that provides that information. Delvepoint only answered Interrogatory 3 as to vendors and contractors, but did not address whether it had officers, directors, or employees involved in the relevant activities. PeopleWhiz asserted that it does not engage in marketing or advertising of any kind, but did not address whether it solicits or offers such a product, or identify any relevant director, officer, or other employee.

[7] Defendants objected throughout that the phrase "information subject to Daniel's Law" calls for a legal conclusion. But that phrase simply refers to the home address or unpublished telephone number of a covered person, as defined in the statute. And to the extent these arguments assume Daniel's Law does not apply extraterritorially,

Infomatics also claimed it cannot identify whether a phone number or address belongs to a covered person. But Interrogatory 3 only asks Defendants to identify potential deponents and does not require Defendants to exhaustively specify whether every address or phone number they disclose belongs to a covered person. Thus, the Court should require these Defendants to respond to Interrogatory 3.

**Interrogatory 4: Identify any advertising or marketing activities conducted by Defendant or anyone acting on Defendant's behalf in New Jersey, including nationwide or multistate marketing activities that included marketing or advertising in New Jersey.**

Belles Camp, Infomatics, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, PeopleWhiz, and First Direct offered deficient responses to Interrogatory 4, generally asserting their marketing activities are nationwide and thus irrelevant to jurisdiction. But Plaintiffs are entitled to examine Defendants' marketing activities in New Jersey to determine whether those activities bear a "particular nexus" with New Jersey and are not required to accept Defendants' legal conclusion that none of its activities constitute "location-specific advertisements." *Hasson*, 114 F.4th at 190. Moreover, under the traditional test, business activities conducted in the forum are relevant contacts regardless of whether they show express targeting. *Id.* at 193–94.

---

that argument has been rejected by the Court. CA No. 1:25-cv-01517-HB, Doc. 29 at 26–30.

**Interrogatory 5: Identify any entity with whom Defendant has since December 1, 2023 had any contracts, agreements, or arrangements in connection with or for the provision of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation entities in New Jersey.**

Belles Camp, Equimine, Infomatics, Nuwber, Lighthouse, Spy Dialer, People Searchers, and We Inform offered deficient responses to Interrogatory 5, at most asserting that they have no contracts, agreements, or arrangements with entities in New Jersey. But agreements with non-New Jersey entities that are engaged in the dissemination of addresses and phone numbers of covered persons are also relevant to whether the Defendant purposefully availed itself of the privilege of doing business in New Jersey. If a Defendant had a relationship with a non-New Jersey entity that directly entered New Jersey on Defendant's behalf to obtain data for use in the Defendant's products, that relationship might independently establish jurisdiction on an agency or alter-ego theory. *See, e.g.*, *Cephalon Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) (personal jurisdiction may be premised on an "agency theory" when "operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").[8]

**Interrogatory 6: Identify all sources from which Defendant obtained information related to information subject to Daniel's Law, including without limitation entities in New Jersey and any public records made available by the State of New Jersey, any agency or instrumentality of the State of New Jersey,**

---

[8] Equimine also objects that Interrogatory 5 is duplicative of Interrogatories 11 and 12, but those Interrogatories are concerned contracts *executed* or *performed* in New Jersey.

**any county, municipality, or other local government in New Jersey, or any agency or instrumentality thereof.**

Equimine, Melissa Data, Lighthouse, Spy Dialer, and First Direct failed to adequately respond to Interrogatory 6.[9] If a Defendant obtained addresses or phone numbers from an entity in New Jersey or from New Jersey public records, that fact is relevant to show ongoing and systematic contacts with New Jersey that are directly related to Plaintiffs' claims, because the data disclosed by those Defendants would originate in New Jersey and has a New Jersey subject matter. *Hasson*, 114 F.4th at 191–92. If a Defendant obtained an address or phone number from a non-New Jersey source, the identity of that source is still relevant to explaining how the Defendant could have acquired that information without relying on New Jersey public records and could be relevant to an "agency" or "alter ego" theory of jurisdiction. *Cephalon*, 629 F. Supp. 2d at 348.

**Interrogatory 7: Identify any audit, review, or evaluation of Defendant conducted since December 1, 2023 by any officers, directors, employees, contractors, vendors, and other individuals or entities acting on Defendant's behalf for compliance with New Jersey law for any of Defendant's services,**

---

[9] Spy Dialer claimed it obtains its data from publicly available records, but said nothing about whether those records are New Jersey records. First Direct addressed New Jersey sources but not non-New Jersey sources.

**products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law.**

Belles Camp, Delvepoint, Equimine, Infomatics, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, GoHunt, and PeopleWhiz refused to respond to Interrogatory 7, asserting that it is irrelevant and unduly burdensome. But audits, reviews, and evaluations for compliance with New Jersey law for products and services that make available addresses or phone numbers of covered persons are relevant to show knowledge under the effects test. *See Hasson*, 114 F.4th at 191–92; *Briskin*, 135 F.4th at 757; *Vonbergen*, 705 F. Supp. 3d at 451. And under the purposeful-availment test, compliance efforts specifically directed at New Jersey indicate that a Defendant "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them in'" the forum. *Hasson*, 114 F.4th at 193 (quoting *Ford Motor*, 592 U.S. at 365).

**Interrogatory 8: Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023.**

Belles Camp, Delvepoint, Equimine, Infomatics, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, GoHunt, and PeopleWhiz failed to respond to Interrogatory 8, asserting that it is irrelevant and seeks privileged information. The identity of personnel who reviewed, analyzed, processed, or responded to Daniel's Law requests is relevant to determine who has

information regarding each Defendant's knowledge of the probable effects of disclosure after receipt of a nondisclosure request from a covered person, which is required to show targeting under the effects test. *See Hasson*, 114 F.4th at 191–92; *Briskin*, 135 F.4th at 757; *Vonbergen*, 705 F. Supp. 3d at 451.

**Interrogatory 9: Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers.**

Belles Camp, Delvepoint, Equimine, Infomatics, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, and PeopleWhiz failed to answer Interrogatory 9. Actions to respond to nondisclosure requests are relevant to establish actual or constructive knowledge under the effects test. *See Briskin*, 135 F.4th at 757; *Vonbergen*, 705 F. Supp. 3d at 451. And although Defendants also objected that Interrogatory 9 is disproportionate and seeks information already in Plaintiffs' possession, Plaintiffs do not have possession of communications in Defendants' email accounts. And even an email sent by one of Atlas's assignor to a Defendant is far more readily accessible to Defendants than Atlas. Like any other company that provides private email accounts, Atlas will not access the communications of assignors who sent nondisclosure requests through an Atlas email account without consent. The account belongs to the user, not Atlas.

**Interrogatory 10: Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after**

**Defendant received a nondisclosure request from a person asserting a right to nondisclosure under Daniel's Law, including any address or phone number of a New Jersey resident that is currently available in the database of information associated with any of Defendant's products, services, or digital platforms.**

Belles Camp, Delvepoint, Equimine, Infomatics, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, GoHunt, and PeopleWhiz refused to answer Interrogatory 10. But under the effects test, addresses and phone numbers disclosed after receipt of a nondisclosure request are relevant to show both that "the defendant committed an intentional tort" by violating Daniel's Law and that "the defendant expressly aimed [its] tortious conduct at the forum" by disclosing forum-specific content with knowledge that the effects will be felt by a New Jersey resident in New Jersey. *Hasson*, 114 F.4th at 187.

## III.    EACH RFP SEEKS INFORMATION RELEVANT TO PERSONAL JURISDICTION AND PROPORTIONAL TO THE NEEDS OF THESE CASES.

Defendants also failed to produce documents responsive to most of the RFPs, which likewise seek documents relevant under both the effects test and the purposeful-availment test. Here again, Defendants' boilerplate objections are meritless, and the Court should compel discovery. "[T]he procedures under Rule 34 were intended to be governed by the same procedures applied under Rule 33" to interrogatories, so objections to RFPs "must be stated with specificity" and "any ground not so stated" is "waived." *Barton*, 2013 WL 1338235, at *5.

20

**RFP 1: All documents reflecting or relating to Defendant's:**

**a. Ownership, registration, licensing, offering, or use of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law (here and below, including without limitation the home addresses and phone numbers of the Covered Persons and Individual Plaintiffs referenced in the Complaint filed against Defendant).**

**b. Marketing, advertising, soliciting, or offering of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.**

**c. Contracts, agreements, or arrangements with any company or individual in New Jersey (including without limitation New Jersey agencies, professionals, vendors, or customers) for the provision of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law.**

**d. Involvement, participation, or role in the collecting, publishing, disseminating, selling, or providing access to, or otherwise making available information subject to Daniel's Law, including but not limited to the sources, methods, purposes, and recipients of such information.**

Belles Camp, Infomatics, Nuwber, Lighthouse, People Searchers, and We Inform failed to produce documents responsive to RFPs 1.a-d, which are relevant to establish that each Defendant "committed an intentional tort" under the effects test, *Hasson*, 114 F.4th at 187, and purposefully "invok[ed] the benefits" of New Jersey law by profiting from data obtained from New Jersey public records and systematic distribution of forum-specific content. *Toys*, 318 F.3d at 451. Nuwber's argument that it does not "collect the addresses of visitors to https://nuwber.com" is entirely nonresponsive to identifying documents relating to any contracts, agreements, or

arrangements with any company or individual in New Jersey that makes available information subject to Daniel's Law. Nuwber reiterated the objection that it cannot produce because it does not track locations of users or customers, which is meritless for the reasons discussed in relation to Interrogatory 2. Spy Dialer failed to produce documents responsive to RFPs 1.b, 1.c, and 1.d. Quantarium failed to produce documents responsive to RFPs 1.b and 1.c. First Direct failed to produce documents responsive to RFPs 1.b and 1.d. Equimine and Melissa Data failed to produce documents responsive to RFPs 1.b and 1.d, respectively.

**RFP 2: All documents reflecting or relating to Defendant's revenues, profits, or income derived from any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation for products or services offered in New Jersey or to New Jersey customers.**

Belles Camp, Nuwber, Lighthouse, Quantarium, Spy Dialer, PeopleWhiz, We Inform, and First Direct objected to RFP 2 and refused to produce any responsive documents. But documents reflecting New Jersey revenues, profits, and/or income are relevant to whether a Defendant "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them in'" the forum. *Hasson*, 114 F.4th at 193 (quoting *Ford Motor*, 592 U.S. at 365). Documents evidencing revenues, profits, and income derived from customers outside New Jersey are relevant to show what fraction of a Defendant's earnings derives from New Jersey and whether the Defendant purposefully "invok[ed] the benefits" of

22

New Jersey law by profiting from data obtained from New Jersey public records.

*Toys*, 318 F.3d at 451

**RFP 3: All documents reflecting or relating to Defendant's share of revenues, profits, or income derived from activities in New Jersey and any other state reflecting the state in which the activities generating the revenues, profits, or income occurred.**

Belles Camp, Delvepoint, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, and First Direct objected to RFP 3 and refused to produce responsive documents. But documents reflecting a Defendant's share of income derived from New Jersey activities are directly relevant to whether a Defendant "systematically served a market in [the forum state]." *Ford Motor*, 592 U.S. 351; *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 366 (E.D. Pa. 2009) (finding defendant's fee-based services, memberships, revenue from customers who listed the forum state in their contact information, all supported the conclusion that defendant purposefully availed itself of the privilege of conducting its activities in the forum state); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (holding there was "no unfairness" in bringing a libel action for the contents of a nationwide magazine when defendant "continuously and deliberately exploited" the forum market).

**RFP 4: Produce all communications with or regarding any governmental entity in the State of New Jersey including the Department of Community Affairs and the Office of Information Privacy.**

Melissa Data and Lighthouse only responded to RFP 4 insofar as it requests documents relevant to communications *with* New Jersey governmental entities like

23

OIP, and not communications *regarding* such entities. But communications regarding entities like OIP are relevant to whether the Defendant knew about but nonetheless intentionally violated Daniel's Law after receiving nondisclosure requests from covered persons. Thus, Plaintiffs request that the Court order those Defendants to supplement their response to RFP 4. Equimine provided an equivocal answer as to whether it possessed any responsive documents, so Plaintiffs likewise request that the Court order Equimine to supplement its response to RFP 4.

**RFP 5: All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant.**

Every moving Defendant objected to RFP 5 as vague, overbroad, and neither relevant nor proportional. But correspondence with Plaintiffs and other New Jersey residents who sent nondisclosure requests is directly relevant to whether the Defendant (i) received a nondisclosure request from each Plaintiff; and (ii) read the nondisclosure requests it received. Those facts are relevant to whether the Defendant "committed an intentional tort" by violating Daniel's Law with respect to each Plaintiff and "expressly aimed [its] tortious conduct at the forum" by acting with actual or constructive knowledge that tort would harm a New Jersey resident in New Jersey. *Hasson*, 114 F.4th at 187,191–92; *Briskin*, 135 F.4th at 757.

The only specific argument Defendants offer for why RFP 5 is overbroad or burdensome offered by any Defendant asserts that documents responsive to this RFP

are already in Plaintiffs' possession. As discussed, this is incorrect. *See* Interrogatory 9, *supra*. Some Defendants note that RFP 5 seeks at least 19,000 documents because each Defendant will have received a nondisclosure request from each of the approximately 19,000 covered persons whose claims are asserted in these cases. Each of those documents are relevant to personal jurisdiction because courts "evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). "Requiring a responding party to perform extensive research or to compile substantial amounts of data and information does not automatically constitute undue burden, and imposing such a burden is particularly proper where … the information is crucial to the ultimate determination of a crucial issue and where the location of the documents is best known by the responding party." *Barton*, 2013 WL 1338235, at *4.

To the extent producing these emails is burdensome, Plaintiffs would be willing to provide a chart of all emails of nondisclosure requests sent to each Defendant so Defendants can simply confirm receipt without actually producing those documents. Plaintiffs would also agree to a stipulation with Defendants acknowledging that they received the nondisclosure requests for purposes of personal jurisdiction, without prejudice to any Defendant's right to raise the fact that they did not receive a particular nondisclosure request.

**RFP 6: All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with**

**Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity.**

Belles Camp, Delvepoint, Equimine, Infomatics, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, GoHunt, and PeopleWhiz objected to RFP 6 and refused to produce responsive documents. But if a Defendant relies on an affiliate to process Daniel's Law requests or otherwise communicate with covered persons, documents evidencing the Defendant's involvement in that related entity's communications with Plaintiffs and other covered persons are relevant to show knowledge and express targeting under the effects test, for the same reasons as RFP 5. Some Defendants argue that "related entity" is vague and suggests Plaintiffs seek documents beyond Defendants' custody or control. But Plaintiffs' RFPs clearly use "related entity" to refer to entities with an agreement, contract, joint venture, partnership, or relationship creating common ownership or control. *Cf.* RFP 8. And nothing in RFP 6 asks Defendants to produce documents they do not have "the legal right or ability to obtain" from a related entity "on demand." *Barton*, 2013 WL 1338235, at *6 (quoting *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 143, 160 (3d Cir. 2004)).

**RFP 7: All documents reflecting or relating to Defendant's policies, procedures, or practices for a. Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity. b. Handling information related to New Jersey residents.**

26

Every moving Defendant objected to RFP 7 and refused to produce responsive documents. But internal policies for compliance with Daniel's Law and handling New Jersey data are relevant to show (i) knowledge that the brunt of the harm caused by disclosure following receipt of a nondisclosure request will be felt in New Jersey, as required under the effects test, *Hasson*, 114 F.4th at 187; and (ii) that the Defendant "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them in'" New Jersey. *Hasson*, 114 F.4th at 193 (quoting *Ford Motor*, 592 U.S. at 365). Some Defendants objected to RFP 7 as vague, overbroad, unduly burdensome, or potentially requesting privileged information, but Defendants never identified any specific burdens or explained how the request is overbroad or vague, so these objections are insufficient. *Solano-Sanchez*, 2021 WL 229400, at *5–6. Some Defendants argued that the term "Daniel's Law Requests" calls for a legal conclusion, that term is simply shorthand for a communication that invokes nondisclosure rights under Daniel's Law. *See* N.J.S.A. 56:8-166.1a(2).

**RFP 8: All documents reflecting or relating to Defendant's relationship, affiliation, or connection with any related entity, including but not limited to any agreements, contracts, joint ventures, partnerships, or common ownership or control, with operations in New Jersey.**

Most Defendants complied with RFP 8, but Equimine and Lighthouse have not clarified whether they have any relationship, affiliation, or connection with an entity with operations in New Jersey. Plaintiffs request that the Court direct them to

27

do so. "'[E]xploi[ting] a market' in the forum State or entering a contractual relationship centered there" constitutes purposeful availment. *Ford*, 592 U.S. at 359 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Relationships involving common ownership or control can support "general jurisdiction over a foreign corporation" if it "has an alter ego relationship with an affiliated entity" that has "systematic and continuous contacts with the forum." *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 596–98 (M.D. Pa. 2009). And although Defendants argue that "related entity" is vague, the term is defined by the examples listed in RFP 8 and is "not so vague or ambiguous as to be incomprehensible to Defendant." *Barton*, 2013 WL 1338235, at *11.

**RFP 9: All documents reflecting or relating to any complaints, claims, lawsuits, or investigations involving Defendant or any other related entity and any New Jersey residents or customers regarding any product or service that publishes, provides access to, or otherwise discloses personal information of New Jersey residents and where Defendant or any other related entity did not dispute the personal jurisdiction of the court in which those complaints, lawsuits, or investigations were based.**

Delvepoint, Equimine, and Spy Dialer objected to RFP 9 and refused to produce any responsive documents. But documents reflecting complaints, claims, lawsuits, or similar proceedings in which a Defendant did not contest the personal jurisdiction of a New Jersey court are relevant to whether exercising jurisdiction over a Defendant would "comport with traditional notions of fair play and substantial justice such that the defendant should reasonably anticipate being haled into court in

28

that forum." *Hasson*, 114 F.4th at 186. Documents connected with such proceedings may also lead to other relevant information on Defendants' other contacts with New Jersey. And although Defendants objected to RFP 9 as vague, overbroad, and unduly burdensome, they never identified any specific basis for any of these objections.

**RFP 10: Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA"), the New Jersey Identity Theft Prevention Act ("NJITPA"), the New Jersey Fair Credit Reporting Act ("NJFCRA"), or any other New Jersey state law or regulation.**

Every moving Defendant objected to RFP 10 and refused to produce responsive documents. But internal documents concerning training for compliance with New Jersey data-privacy law are plainly relevant to whether Defendants: (i) "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them in'" New Jersey, *Hasson*, 114 F.4th at 193 (quoting *Ford Motor*, 592 U.S. at 365); and/or (ii) "'direct[ed] electronic activity into [the forum] with the manifest intent of engaging in business or other interactions within that state *in particular*.'" *Id.* at 191 (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F. 3d 390, 401 (4th Cir. 2003)). And although some Defendants gesture at attorney-client privilege over some documents, they never

29

suggest that all documents responsive to RFP 10 satisfy the elements of the privilege

and refused to produce a privilege log here when asked in a meet and confer.[10]

**RFP 11: Any and all documents reflecting or relating to any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law for any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law.**

Every moving Defendant objected to RFP 11 and refused to produce any

responsive documents. Audits, reviews, and evaluations conducted to determine

whether products and services that provide access to the addresses and phone

numbers of covered persons comply with New Jersey law are relevant to

(i) knowledge and express targeting under the effects test; (ii) whether the Defendant

"systematically served" the New Jersey market for personal data, *Ford Motor*, 592

U.S. at 365; and (iii) whether the Defendant directed its electronic activity into New

Jersey with "the intent of engaging in business or other interactions within that state

*in particular*." *Hasson*, 114 F.4th at 191. Some Defendants objected to RFP 11 as

overly broad, unduly burdensome, and implicating unspecified confidentiality

concerns, but Defendants never identified a specific basis for these objections.

**RFP 12: Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of**

---

[10] Plaintiffs engaged in a group meet and confer with counsel for all Defendants on June 9, 2025. During this call all Defendants represented that they were not going to provide a privilege log for any responsive records withheld on the basis of privilege, despite their unequivocal obligation to do so.

Defendant's websites identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law.

Every moving Defendant objected to RFP 12 and refused to produce responsive documents. But an opt-out, exclusion, or suppression mechanism provided to New Jersey residents or customers is relevant to whether a Defendant acted with actual and/or constructive knowledge that disclosing a New Jersey address or phone number after receipt of a nondisclosure request would violate that covered person's rights under New Jersey law and expose them to harm in New Jersey, which goes to whether the Defendant "committed an intentional tort" and "expressly aimed [its] tortious conduct at the forum." *Hasson*, 114 F.4th at 187, 191–92. And no Defendant made any attempt to explain why identifying documents related to such mechanisms would be unduly burdensome. Thus, the Court should order all moving Defendants to comply with RFP 12.

**RFP 13: Any and all documents reflecting or relating to any internal or external communications, correspondence, or discussions by Defendant or any other related entity regarding the introduction and passage of Daniel's Law in New Jersey, including the applicability, scope, and effect of the law.**

Belles Camp, Delvepoint, Equimine, Infomatics, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, GoHunt, and PeopleWhiz objected to RFP 13 and refused to produce any responsive documents. But documents evidencing internal and external communications regarding the enactment and effects of Daniel's Law are relevant to show (i) knowledge and

express targeting under the effects test; and (ii) that the Defendant directed its electronic activity into New Jersey with "the intent of engaging in business or other interactions within that state *in particular*" under the purposeful-availment test. *Hasson*, 114 F.4th at 191. And no Defendant articulated any explanation of why producing these documents would be unduly burdensome or how RFP 13 is vague or overbroad, apart from rehashed complaints about "related entity."

**RFP 14: All documents reflecting or relating to Defendant's receipt of nondisclosure requests pursuant to Daniel's Law, including the date of receipt, the manner of receipt, the number of requests, the contents of those requests, and Defendant's analysis of those requests.**

Every moving Defendant refused to produce documents in response to RFP 14. But documents evidencing receipt of nondisclosure requests are plainly relevant to establish that the Defendant "committed an intentional tort" and "expressly aimed [its] tortious conduct at the forum." *Hasson*, 114 F.4th at 187, 191–92. Receipt of a nondisclosure request is an element of the tort created by Daniel's Law, and receipt of a nondisclosure request ensures that a Defendant has actual or constructive knowledge for purposes of the effects test. *Briskin*, 135 F.4th at 757. Documents evidencing how the Defendant analyzed those requests are relevant to show the Defendant read the notice and had actual knowledge that disclosure would violate the rights of a covered person in New Jersey and expose them to harm there.

**RFP 15: All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs.**

Every moving Defendant objected to RFP 15 and refused to produce responsive documents. But documents reflecting or relating to a Defendant's response to a nondisclosure request made by an assignor or Individual Plaintiff are highly relevant whether the Defendant had the actual and/or constructive knowledge required under the "express aiming" element of the effects test. *Hasson*, 114 F.4th at 191–92; *Briskin*, 135 F.4th at 757. Thus, the Court should order Defendants to comply with RFP 15.

**RFP 16: All documents reflecting or relating to any changes to Defendant's processes regarding Daniel's Law nondisclosure requests or any other requests to remove personal information of New Jersey residents.**

Belles Camp, Delvepoint, Equimine, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, PeopleWhiz, and First Direct refused to respond to RFP 16. But documents evidencing changes to processes for nondisclosure requests show Defendants' knowledge of their duties under Daniel's Law, which again goes to whether a subsequent disclosure is targeted at the covered person in New Jersey. *See Hasson*, 114 F.4th at 191; *Briskin*, 135 F.4th at 757.

**RFP 17: All documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation, including without limitation records of every time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers of the Covered Persons and Individual Plaintiffs.**

All moving Defendants objected to RFP 17 and refused to produce documents indicating what they did to preserve records of acts of publication or otherwise

making available addresses or phone numbers of Atlas assignors or Individual Plaintiffs. If there are gaps in any Defendants' records of those acts of publication or making available, documents reflecting litigation holds or similar are directly relevant to whether an adverse or spoliation inference undermines the Defendant's personal-jurisdiction defense. Such disclosure records are directly relevant to the "intentional tort," "brunt of the harm," and "express aiming" elements of the effects test, and without them, Plaintiffs will be prejudiced in proving jurisdiction on a claim-by-claim basis.

**RFP 18: All documents reflecting or relating to the number of individuals with New Jersey addresses in any and all databases or on any sites that Defendant utilizes in connection with any product or services.**

Belles Camp, Infomatics, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, and We Inform have failed to produce documents in response to RFP 18 or provided nonresponsive answers. Such documents are relevant to establish the extent to which the Defendant traffics in forum-specific content and purposefully "invok[ed] the benefits" of New Jersey law by profiting from data obtained from New Jersey public records. *Toys*, 318 F.3d at 451. Defendants have not shown why producing these documents would be unduly burdensome, so the Court should compel discovery.

**RFP 19: All documents reflecting or relating to the products or services that Defendant has delivered or otherwise made available to businesses and**

34

**individuals with information that includes New Jersey addresses, and the total amount and percentage of Defendant's revenue from those services or products.**

Equimine, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, and First Direct objected to RFP 19 and refused to produce responsive documents. Belles Camp, Infomatics, People Searchers, and We Inform provided some numbers but no underlying documents. Such documents are relevant to establish the extent to which the Defendant traffics in forum-specific content and purposefully "invok[ed] the benefits" of New Jersey law by profiting from data obtained from New Jersey public records. *Toys*, 318 F.3d at 451. Defendants relied on Interrogatories 1, 2, and 3 in objecting, but those responses identified data files containing addresses and/or phone numbers which have been relicensed to customers and four New Jersey entities which placed orders for that data. Documents concerning these data files and their related transactions are responsive to RFP 19 and must be produced.

**RFP 20: All documents reflecting or relating to the businesses and individuals in the state of New Jersey that have received products or services from Defendant, and the total amount and percentage of revenue Defendant has earned from those businesses and individuals.**

Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, and First Direct objected to RFP 20 and refused to produce responsive documents. Belles Camp, Informatics, People Searchers, and We Inform provided some numbers but no underlying documents. To the extent their numbers indicate the existence of data sets containing New Jersey addresses and/or New Jersey customers, documents

reflecting or relating to these data files and transactions are responsive to RFP 20, and must be produced. First Direct has agreed to produce but not done so yet. Nuwber and Spy Dialer reiterated the objection that they cannot produce because they do not track where users or customers are, which is meritless for the reasons discussed in relation to Interrogatory 2.

**RFP 21: All documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations, including but not limited to Daniel's Law, NJITPA, and NJFRCA.**

Belles Camp, Delvepoint, Infomatics, Melissa Data, Nuwber, Lighthouse, Quantarium, Spy Dialer, People Searchers, We Inform, PeopleWhiz, and First Direct objected to RFP 21 and refused to produce responsive documents. In addition to the related grounds for relevance discussed above in RFPs 15 and 16, compliance documents focused on New Jersey privacy laws show Defendants' knowledge that they sell, transfer, or otherwise transact data with or within the state of New Jersey, and are subject to New Jersey regulations governing data privacy. *See Ford*, 592 U.S. at 365; *Keeton*, 465 U.S. at 781.

**RFP 22: All documents reflecting or relating to any contracts that Defendant (including any predecessors and agents) has executed with a business with operations in New Jersey or with a New Jersey forum selection clause.**

Belles Camp, Lighthouse, Quantarium, and First Direct have refused to produce documents responsive to RFP 22. But contracts with New Jersey businesses are paradigmatic relevant contacts under the purposeful-availment test. *Ford*, 592

U.S. at 360. And agreements featuring New Jersey forum-selection clauses are relevant to whether the Defendant has previously assented to New Jersey jurisdiction, which indicates that exercising jurisdiction would "comport with traditional notions of fair play and substantial justice such that the defendant should reasonably anticipate being haled into court in that forum." *Hasson*, 114 F.4th at 186.

**RFP 23: All documents referenced or identified by Defendant in response to Plaintiffs' First Set of Interrogatories.**

Belles Camp, Nuwber, Quantarium, Spy Dialer, People Searcher, We Inform, and First Direct have thus far failed to comply with RFP 23, even though the documents it seeks are relevant to the issues presented in the Interrogatories. The Court should compel discovery of those documents insofar as it compels discovery on any related Interrogatory.

## CONCLUSION

Plaintiffs respectfully request the Court order Defendants to supplement their responses to interrogatories and requests for production to cure the deficiencies identified above.

Respectfully submitted,

Dated: June 30, 2025

**PEM LAW LLP**                                **BOIES SCHILLER FLEXNER LLP**

By: /s/ *Rajiv D. Parikh*                      /s/ *Eric M. Palmer*

37

Rajiv D. Parikh

Eric M. Palmer

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 557-5700
Email: rparikh@pemlawfirm.com
     keinhorn@pemlawfirm.com
     jmerejo@pemlawfirm.com

**BIRD MARELLA RHOW
LINCENBERG DROOKS NESSIM
LLP**
Ekwan E. Rhow (admitted *pro hac vice*)
Elliot C. Harvey Schatmeier (admitted
*pro hac vice*)
Bill L. Clawges (admitted *pro hac vice*)
1875 Century Park East, 23rd Fl
Los Angeles, California 90067
Telephone: (310) 201-2100
Email: erhow@birdmarella.com
ehs@birdmarella.com
bclawges@birdmarella.com

Eric M. Palmer (admitted *pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Email: epalmer@bsfllp.com

Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite
2800 Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
Ryan J. McGee (admitted *pro hac vice*)
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: rmcgee@forthepeople.com
     jyanchunis@forthepeople.com

*Attorneys for Plaintiffs*

38

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of June, 2025, I electronically filed a true

and complete copy of the foregoing document with the Clerk of the Court using the

CM/ECF system, which will then send a notification of such filing.

/s/ *Rajiv D. Parikh*
Rajiv D. Parikh